## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **Global Connect Technology, Inc.,**<br><br>Plaintiff,<br><br>v.<br><br>**Anker Innovations Ltd.,**<br><br>Defendant. | Case No. 2:25-cv-1207<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Global Connect Technology, Inc. ("Global Connect" or "Plaintiff") hereby files this Original Complaint for Patent Infringement against Anker Innovations Ltd. ("Anker" or "Defendant"), and alleges, upon information and belief, as follows:

### THE PARTIES

1. Global Connect is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at 26 Willow St., Wellesley MA 02481.

2. Upon information and belief, Defendant Anker is a corporation organized under the laws of Hong Kong, S.A.R., with a principal place of business at Rooms 1318-19, 13/F, Hollywood Plaza, 610 Nathan Road, Mongkok, Kowloon, Hong Kong, S.A.R. Defendant may be served through its U.S. subsidiary, Fantasia Trading, LLC, and its California agent for service of process, Roy R. Stanley, located at 1624 Telegraph Ave., 2nd Floor, Oakland, CA 94612.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1338(a).

4. This Court has personal jurisdiction over Defendant because Defendant conducts business in and has committed acts of patent infringement in this District and the State of Texas and has established minimum contacts with this forum state such that the exercise of jurisdiction over Defendant would not offend the traditional notions of fair play and substantial justice.

5. Defendant is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in the State of Texas and this District, including through its past and ongoing infringing activities, because Defendant regularly does and solicits business herein, and/or because Defendant has engaged in persistent conduct and/or has derived substantial revenues from goods and services provided in the State of Texas and this District.

6. Defendant transacts substantial business with entities and individuals in the State of Texas and this District, by among other things, willfully using the infringing methods and systems throughout the State of Texas and this District. Defendant relies on the online shopping system, one or more being necessary to introduce and sell millions of products into the stream of commerce with the knowledge and expectation that they will be sold in the State of Texas and this District.

7. Venue is also proper in the Eastern District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(b) and (c) and 1400(b), as well as under the "alien venue rule." *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706 (1972); *In re HTC Corp.,* 889 F.3d 1349 (Fed. Cir. 2018); Weatherford *Tech. v. Tesco Corp.,* 2018 WL 5315206 at *2-3 (E.D. Tex. Oct. 26, 2018). As noted above, Defendant is a foreign entity which maintains a regular and established business presence in the United States.

## BACKGROUND AND PATENTS-IN-SUIT

8.  Founded in 1997, and with almost 30 years of computer architecture and database programming, Global Connect's inventor, Jena J. Jordahl (the "Inventor"), conceived U.S. Patent No. 7,246,128B2 (the "'128 Patent" and the "Patents-in-Suit"), relating to computer database systems and methods, and in particular, database system and methods that permit the storage, retrieval and manipulation of a given set of data in different contexts.

9.  By operation of law, the '128 Patent was originally issued and exclusively vested to the named inventor, Jena J. Jordahl (the "Inventor") as of the issue date of the '128 Patent. Global Connect is the sole and exclusive owner, by assignment, of the '128 Patent. Thus, Global Connect has sole and exclusive standing to assert the '128 Patent and to bring these causes of action.

10. The Patents-in-Suit are valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

11. The Patents-in-Suit includes numerous claims defining distinct inventions. As discussed below, the inventions generally relate to computer database systems and methods, and in particular, database system and methods that permit the storage, retrieval and manipulation of a given set of data in different contexts.

12. The priority date of each of the Patents-in-Suit is at least as early as June 12, 2002. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

13. Before the inventions of the '128 Patent, The advent of the computer has permitted dramatic increases in the capability to store and manipulate data. The development of computer networks, such as the Internet, has provided unprecedented access to data. However, the proliferation of data does not necessarily maximize the usefulness of that data. In fact, proliferation of data can, in some circumstances, even serve as an obstacle to clear understanding, such as by obscuring connections

between data or burying the most relevant data among a large amount of irrelevant data. *See* '128 Patent, Col. 1, ll. 21-30.

14. Methods and systems are needed to assist users in making more effective use of data. One general way to make more effective use of data is to provide an organizational structure for the data. That is, data may be more easily understood if it is stored and presented according to a particular point of view. One way of representing an organizational structure or a point of view is a hierarchy. One example of such a hierarchy is a "drill down" hierarchy in which each level of a hierarchy represents related subcomponents of the next higher level of the hierarchy, with related elements of the various levels of the hierarchy being connected by lines or arrows. Representing data elements via a hierarchy can improve utilization of the data, because the data can be found, examined and manipulated based on its location in the hierarchy. For example, a simple hierarchy for personal information might include high level fields of "name" and "address," with second level fields of "first, last and middle" for "name" and "street number, street name, city, state and zip code" for "address." Systems and methods exist for storing data related to such a hierarchy. Creating connections between available data and the hierarchy categories while using the hierarchy to focus attention on the distinguishing features thus allows the user to impose some meaning on the data relative to other data related to the same hierarchy. *See* '128 Patent, Col. 1, ll. 31-54.

15. Conventional database systems and methods can be subject to a number of problems. Primarily, people change the data structures very slowly, many times as a means of implementing change controls. If the structures underlying the data can be built in such a way that based on one's focus area the data relationships show up differently, then the system can exhibit rigor in validating the storage of information while providing exceptional manipulation and analysis capabilities. Though current database technology supports different views of the same data, this is not the same as

providing different contexts for acting on the data. Current technology provides views that act as censors, blotting out information considered irrelevant to the defined view. *See* '128 Patent, Col. 1, ll. 55-67.

16. It can be suggested that the same data may have dramatically different meaning and significance depending on the point of view of the person, group, or agent who is using the data. For example, a zip code might be highly relevant to a party wishing to send a letter but irrelevant to a party seeking driving directions to a particular location. Such a simple example may not present a major problem because the user can simply ignore the zip code, but when uses of the same data are in increasingly different contexts, conventional database methods and systems are increasingly ineffective at providing useful database functions for the different contexts. As a result, users typically build distinct databases for different uses of the data, even though the data content may overlap substantially. *See* '128 Patent, Col. 2, ll. 1-14.

17. The inventors of the '128 Patent conceived systems and methods create an environment where the analysis of similarities and differences between pieces of information can be customized and displayed in a manner that is easily understood. Unique points of view can be employed in decomposing complex information into manageable chunks while at the same time providing a container for the more amorphous concepts of context and relatedness. Maps, specifically hierarchical maps, can be the metaphor of choice for codifying and displaying the relationships between pieces of information and the importance of a piece to the point of view. Because the systems and methods can be easily customizable and configured to run on various computer hardware for numerous purposes, the core aspect of the systems and methods need not be limited to the visualization used to present the point of view or to the particular search technique employed. While these components can be important for the functioning of the system, it can be understood

that future implementations can include other UI metaphors and alternate search routines. Mapping can include representations that express a point of view and the search routines can express the similarities and differences between how information shows up relative to that point of view. *See* '128 Patent, Col. 3, ll. 3-26.

18. Another important aspect of the invention, '128 Patent discloses systems and methods can include a system architecture that allows for both pattern recognition routines and logic rules to ascertain the relevance of a piece of information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood, and methods of relating information to either the point of view or the frame of reference. A set of transformational and statistical language data can provide the backdrop for similarity functions to assess relatedness when the data presented does not identically match. Language can be interpreted broadly to include systematic methods of communication or sensation through a device. e.g., English, Latin, Cobol, image, sound, ultra-sonic, or encrypted language. *See* '128 Patent, Col. 3, ll. 27-42.

19. Similarity functions can determine exactly how similar something must be to be considered related, and difference functions can determine exactly how different something can be before being considered unrelated. As an example for the string of letters "Ave", abbreviation similarity functions can acknowledge that "Ave" can be an abbreviation for the word "Avenue". Difference functions can indicate that two strings of letters, one being half as long as the other and not being an abbreviation or alternate name for the other, are not related. *See* '128 Patent, Col. 3, ll. 43-53.

20. Since information in a computer system is stored in memory or on storage media such as hard drives, CD roms, DVD's, etc., the systems and methods can consist of information on how to access and manipulate information in various kinds of formats. In a preferred embodiment, the

systems and methods can use the distinctions in points of views, frames of reference, similarity and difference functions, and relatedness maps such as hierarchies when storing and manipulating data access information. Additionally, the systems and methods can store information used to manage its own control and customization in the same format and using the same methods as that used to store application information. *See* '128 Patent, Col. 3, ll. 54-67.

21. The '128 Patent is a pioneering patent, and has been cited as relevant prior art in 280 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Micorosft, Google, Facebook, Amazon, Alibaba, IBM, Adobe, AOL, Yahoo!, Mitsubishi Electric, Fujifilm Business and Automation Anywhere.

22. The claims of the '128 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

23. The expiration date of the '128 Patent is no earlier than September 22, 2027.

## ANKER'S INFRINGEMENT

24. Upon information and belief, Anker makes, sells, advertises, offers for sale, uses, or otherwise provides system for enabling multiple hierarchical points of view that utilize the '128 Patent's inventions. Anker has developed of offered systems that infringe the '128 Patent, and which include at least, but not limited to, the Anker's online shopping system, which includes, in part, its website https://www.anker.com/, or its mobile application, on desktop or on a smartphone device,

and its backend servers, software, and network infrastructure, and displayed and provided to a user's desktop or mobile device, including all augmentations to these systems. Collectively, all the foregoing is referred to herein as the "Accused instrumentalities."

25. As shown below, and with more detail in Exhibit A attached hereto, the Accused Instrumentalities include each and every limitation of at least, but not limited to, claim 21 of the '128 Patent, and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.



## COUNT I
### Infringement of U.S. Patent No. 7,246,128B2

26. Plaintiff incorporates the above paragraphs by reference.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                8

27. Anker without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

28. Anker thus has infringed at least claim 21 of the '128 Patent literally and/or under the doctrine of equivalents.

29. Further on information and belief, Anker directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages. Further, and on information and belief, Anker has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities. Such testing and/or legal compliance necessarily requires Anker to make and use the Accused Instrumentalities in an infringing manner. Still further, Anker is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

30. As shown above and in Ex. A, Anker is making, using, and offering for sale the Accused Instrumentalities.

31. Additionally, upon information and belief, Anker owns, directs, and/or controls the infringing systems and method operation of the Accused Instrumentalities.

32. On information and belief, Anker has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '605 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '128 Patent by Anker is willful.

33. In addition or in the alternative, Anker, through its willful blindness which qualifies for requisite knowledge, indirectly infringed by way of inducing direct infringement by Anker's customers and/or contributing to the infringement by Anker's customers of the '128 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '128 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Anker injured Plaintiff and is thus liable to Plaintiff for infringement of the '128 Patent under 35 U.S.C. § 271.

34. Anker, through its willful blindness which qualifies for requisite knowledge, induced infringement under Title 35 U.S.C. § 271(b). Anker performed actions that induced infringing acts that Anker knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

35. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

36. Anker has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

37. Anker has induced infringement by the customers and end users with the intent to cause infringing acts by them, in the alternative, with the belief that there is a high probability that they infringe the '128 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

38. The foregoing infringement on the part of Anker has caused past and ongoing injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '128 Patent.

39. Each of Anker's aforesaid activities have been without authority and/or license from Plaintiff.

40. Plaintiff has been damaged as a result of the infringing conduct by Anker alleged above. Thus, Anker is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

41. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Anker as follows:

1. Declaring that Anker has infringed the '128 Patent;

2. Awarding Plaintiff its damages suffered because of Anker's infringement of the '128 Patent;

3. Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Anker's willful infringement of the Patents-in-Suit;

4. Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

5. Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Dated: December 11, 2025                    Respectfully Submitted

/s/ Christopher A. Honea
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF
GLOBAL CONNECT, INC.**